IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREGORY BUCKNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:25-cv-00148 |
| | ) Judge Aleta A. Trauger |
| JACK'S FAMILY RESTAURANTS, LP, | ) |
| BIG JACK ULTIMATE HOLDINGS, LP, | ) |
| BROADSTONE JFR PORTFOLIO, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

Before the court are (1) the Motion to Drop Improperly Joined Party Pursuant to Rule 21 of the Federal Rules of Civil Procedure (Doc. No. 14), filed by defendant Broadstone JFR Portfolio, LLC ("Broadstone"); and (2) the Motion to Transfer under 28 U.S.C. § 1404(a) (Doc. No. 11), filed by defendants Jack's Family Restaurants, LP and Big Jack Ultimate Holdings, LP (collectively, "the Jack's entities," unless necessary to distinguish between them).

The court must as an initial matter determine whether it may exercise jurisdiction over this case, so it will address first the Motion to Drop Improperly Joined Party. Finding that defendant Broadstone was improperly joined, the court will grant Broadstone's Motion to Drop. Further, for the reasons set forth herein, the Motion to Transfer will be granted, and this case will be transferred to the Eastern Division of the Western District of Tennessee under § 1404(a).

**I.     MOTION TO DROP IMPROPERLY JOINED PARTY**

   **A.     Background**

Plaintiff Gregory Buckner is a resident and citizen of Shelbyville, Bedford County, Tennessee. (Doc. No. 1-2, Compl. ¶ 1.) Buckner alleges that, on an unspecified date, he slipped

and fell due to a liquid and greasy substance on the floor of a Jack's Family Restaurant (the "Restaurant"), operated by the Jack's entities, located at 700 Wayne Road, Savannah, Hardin County, Tennessee (the "Subject Property").[1] (*Id.* ¶¶ 21–26.) He sustained substantial injuries in the fall. (*Id.* ¶ 27.) He filed suit in the Circuit Court for Davidson County, Tennessee on January 6, 2025, asserting negligence claims against all three defendants and seeking $2,000,000 in compensatory damages. (*Id.* at 10.)

The Jack's entities removed the lawsuit to federal court on February 10, 2025 under 28 U.S.C. § 1441(b), citing diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. No. 1.) Both Jack's entities are Delaware limited partnerships the principal address for which is in Birmingham, Alabama. (Id. ¶¶ 11–12.) According to the Notice of Removal, no partner of either Jack's entity resides in or is a citizen of Tennessee, for purposes of diversity jurisdiction. (*Id.*)

Defendant Broadstone is a New York limited liability company. According to the Notice of Removal, at least one member of Broadstone is a Tennessee resident. (*Id.* ¶ 13.) In other words, the Notice of Removal recognized that Broadstone's presence in the lawsuit technically defeats diversity, but the removing defendants asserted that Broadstone was improperly or fraudulently joined in this lawsuit, such that removal was appropriate. (*Id.* ¶¶ 14–15.)

Shortly after removal, Broadstone filed an Answer in which it asserts, as affirmative defenses, both that it is not a proper party to this lawsuit and that the Complaint fails to state a claim against it for which relief may be granted. (Doc. No. 13 at 1.) Essentially contemporaneously, it filed its Motion to Drop Improperly Joined Party and supporting

---

[1] As discussed below, Hardin County falls within the Eastern Division of the United States District Court for the Western District of Tennessee. *See* 28 U.S.C. § 123(c)(1).

Memorandum of Law (Doc. Nos. 14, 14-1), arguing that the negligence claim against it, as a landlord not in control of the leased property, is barred by Tennessee law.

The plaintiff responds in opposition to the motion, arguing that (1) Broadstone could not have been improperly joined because its "presence in this case does not impact diversity jurisdiction";[2] and (2) in any event, Broadstone has "failed to meet its heavy burden of proving improper joinder" because it has presented no evidence to establish that it is not a proper party. (Doc. No. 17 at 2, 3.) Broadstone filed a Reply, pointing out that, in fact, it relies upon evidence in the form of the Declaration of Mara Atwell and a copy of the Master Lease Agreement between Broadstone and the Jack's entities, which were filed as exhibits to the Notice of Removal, and that the court may consider these documents in determining whether Broadstone was properly joined as a defendant. (Doc. No. 18; *see also* Doc. No. 1-3.)

B. **Legal Standards**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." And a court has "original jurisdiction," for purposes of § 1441(a), over any case where the amount in controversy exceeds $75,000 and is between "citizens of different states." 28 U.S.C. § 1332(a)(1).

While a corporation is considered a citizen of the state in which it was incorporated and the state where it has its principal place of business, *id.* § 1332(c)(1), the rule is different for a limited liability company ("LLC"). An LLC "has the citizenship of its members and submembers." *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir.

---

[2] Presumably for this reason, the plaintiff does not challenge removal.

2022) (citation omitted). Broadstone concedes that one of its members or sub-members is a citizen of Tennessee, such that complete diversity is lacking if its citizenship is taken into consideration.

Under the law of this Circuit, however, fraudulent joinder of non-diverse defendants will not defeat removal based on diversity. *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (quoting *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009)).[3] As the Sixth Circuit has explained, this standard requires the absence of a reasonable basis in law or fact for the claims asserted:

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.

*Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)); *see also Walker*, 443 F. App'x at 951. The removing party bears the burden of proving fraudulent joinder. *Alexander*, 13 F.3d at 949; *Walker*, 443 F. App'x at 955 n.7. If the non-diverse defendant was not fraudulently joined, then the district court lacks subject-matter jurisdiction and must remand the case to state court. *Saginaw Hous. Comm'n*, 576 F.3d at 624. "By contrast, if the non-diverse defendant was fraudulently joined, the court may exercise

---

[3] The plaintiff's motive for joining the non-diverse party to the lawsuit is "immaterial to our determination regarding fraudulent joinder." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). As the court explained in *Walker*, improper joinder may be established either by a showing of "actual fraud in the pleading of jurisdictional facts" or the plaintiff's inability "to establish a cause of action against the non-diverse party in state court." *Walker*, 443 F. App'x at 952 (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*)). There are no allegations here that the plaintiff fraudulently pleaded jurisdictional facts or intentionally joined Broadstone solely for the purpose of defeating diversity jurisdiction.

jurisdiction over the case, but the court must dismiss that defendant from the action and lacks the power to resolve the merits of the claims against it." *Cline v. Dart Transit Co.*, No. 21-3468, 2023 WL 3003190, at *3 (6th Cir. Apr. 19, 2023) (citing *Pollington v. G4S Secure Sols. (USA) Inc.*, 712 F. App'x 566, 566 (6th Cir. 2018)).

In addressing fraudulent joinder allegations, courts in the Sixth Circuit must "apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (citing *Walker*, 443 F. App'x at 952–54). If appropriate under the particular circumstances, the court may "pierce the pleading" and consider summary judgment-type evidence, including affidavits presented by the parties. *Id.*; *see also Walker*, 443 F. App'x at 952–53 (discussing *Smallwood*, 385 F.3d at 573–74). However, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Walker*, 443 F. App'x at 953 (quoting *Smallwood*, 385 F.3d at 573–74). "Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor," and the burden of persuasion on the party claiming fraudulent joinder is a "heavy one." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003)).

### C. The Claim Against Broadstone

As set forth above, the plaintiff brings this premises liability suit against Broadstone and the Jack's entities, asserting negligence claims. He alleges "upon information and belief" that Broadstone and the Jack's entities "leased, owned, operated and/or otherwise operated" the Restaurant on the Subject Property (Compl. ¶¶ 11; *see also id.* ¶¶ 9–10, 16) and that the defendants are "jointly and severally" liable for "failing to maintain the Subject Property in a safe condition" (*id.* ¶ 37). Aside from these conclusory assertions, the Complaint contains no actual facts upon which Broadstone's liability is premised.

Broadstone relies upon the Declaration of Mara Atwell, in her capacity as Vice President of Broadstone's corporate parent, and the Lease in effect between Broadstone and the Jack's entities beginning October 5, 2015, both attached as exhibits to the Jack's entities Notice of Removal. As set forth in the Atwell Declaration and confirmed by the Lease, Broadstone was at all times an "out of possession landlord"; it did not operate the Restaurant on the Subject Property, was not involved in the day-to-day operations of the Restaurant, was not responsible for the maintenance and repair of the Subject Property, and leased the Subject Property to the Jack's entities "as is." (Doc. No. 1-3, Atwell Decl. ¶¶ 6–8; *see also* Doc. No. 1-3, Lease ¶¶ 2(c), 11(d), 12, 15, 16.) Citing Tennessee law,[4] Broadstone argues that, because the undisputed facts establish that it is a landlord who was not in control of the premises and did not have greater knowledge than the tenant of purportedly dangerous conditions on the Subject Property at the time of the slip-and-fall incident, the plaintiff cannot as a matter of law state a colorable claim against it. (Doc. No. 14-1 at 3 (citing *Priestas v. Kia Props., LLC*, No. W2019-00728-COA-R3-CV, 2019 WL 6894066, at *4 (Tenn. Ct. App. Dec. 18, 2019); *Lethcoe v. Holden*, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000)).)

Under Tennessee law, the general rule is that "a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises." *Lethcoe v. Holden*, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000). This rule is subject to several exceptions, including a "dangerous conditions" exception that applies when all three of the following factors are satisfied:

---

[4] The parties agree that Tennessee substantive law applies to this diversity dispute. When "all parties have acquiesced—without comment"—to the application of a particular state's law, the court need not "delve too deeply" into choice of law analysis. *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998). In any event, it is clear that Tennessee choice-of-law rules and substantive law apply. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992).

"(1) the dangerous condition was in existence at the time the lease was executed; (2) the landlord knew or should have known of the dangerous condition; and (3) the tenant did not know of the condition and could not have learned about it through the exercise of reasonable care." *Id.* at 256 (citation omitted). "As a natural corollary of this exception, when a landlord and a tenant have co-extensive knowledge of the dangerous condition," the landlord is not liable for injuries to invitees caused by that condition. *Id.* Another recognized exception is when a landlord retains control of the property. *Id.* at 258; *accord Clark v. Greyhound Lines, Inc.*, No. 3:07CV1101, 2008 WL 11388423, at *2 (M.D. Tenn. Sept. 8, 2008) (granting summary judgment for the landlord in a premises liability action where the landlord "did not exercise control over the property on which the accident occurred").

    The plaintiff asserts that Broadstone has not met "its heavy burden of proving improper joinder," first, because "[m]ere allegations are not evidence, and [Broadstone's] assertion of being an 'out-of-possession landlord' is wholly unsubstantiated." (Doc. No. 17 at 3.) He also asserts that Broadstone has not produced a lease agreement showing that it was not in control of the Subject Property. (*Id.*) Both of these assertions overlook the Atwell Declaration and attached Lease, which together establish that Broadstone was an out-of-possession landlord that leased the Subject Property to the Jack's entities "as is" and that the Jack's entities, as "Tenant," agreed to maintain the Subject Property and make all necessary "repairs and replacements of every kind and nature, whether foreseen or unforeseen, which may be required to be made upon or in connection with any of the Leased Premises in order to keep and maintain the Leased Premises in good condition and repair." (Doc. No. 1-3, Lease ¶¶ 2(c), 12(a).) The exception for when a landlord retains control over the premises does not apply

The plaintiff asserts that he may be able to show that some other exception to the general rule foreclosing a premises liability claim against a landlord who is not in possession or control of the premises may apply. He maintains that discovery might reveal pre-existing problems, such as "plumbing leaks, defective flooring, or inadequate ventilation," of which Broadstone had prior notice but failed to correct. (Doc. No. 17 at 4.) However, even if the court were to presume that discovery might uncover such pre-existing problems of which Broadstone had knowledge, dismissal of Broadstone would still be required under the terms of the Lease, pursuant to which the Jack's entities took possession of the premises "'AS IS,' 'WHERE IS' AND 'WITH ALL FAULTS.'" (Lease ¶ 2(c).) Moreover, the plaintiff alleges that he slipped on a "liquid and greasy substance on the floor." (Compl. ¶ 25.) This is precisely the type of condition the tenant in possession either knew about or could have learned about through the exercise of reasonable care, *Lethcoe*, 31 S.W.3d at 256, and over which the present tenant had more control than an absent landlord. Thus, the dangerous conditions exception does not apply, and the plaintiff does not suggest that any other exception to the rule of non-liability for a landlord not in control of the premises might apply.

In sum, through the Atwell Declaration and attached Lease, the terms of which are undisputed, Broadstone has presented evidence establishing that the plaintiff has no colorable cause of action against it, even if all disputed questions of fact as to how or when the slippery substance came to be on the Restaurant floor are resolved in favor of the plaintiff.

Because the plaintiff cannot state a colorable claim against Broadstone, all claims against Broadstone will be dismissed without prejudice. The court retains subject matter jurisdiction over this case and may consider the Motion to Transfer.

## II. MOTION TO TRANSFER VENUE

### A. Legal Standards

"There is only one federal venue into which a state court action may be removed, and that is in the statutorily dictated 'district court . . . for the district and division embracing the place where [the state court] action [was] pending.'" *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002) (quoting 28 U.S.C. § 1441(a)). Once a case is removed from state court to the appropriate district court, as governed by § 1441(a), the removing party "may not challenge venue in the district court as of right, . . . as if the case had originally been brought there." *Id.* (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998)). However, a party "may nonetheless request a discretionary transfer to a more convenient district court forum under the transfer provision," 28 U.S.C. § 1404(a). *Id.* (quoting *PT United*, 138 F.3d at 72).

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo*, 285 F.3d at 537. "The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant," and it is a substantial one. *Heffernan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 498 (6th Cir. 2016); *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984).

The "threshold inquiry" under § 1404(a) is whether the action "might have been brought" in the transferee district. *Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 508 (N.D. Ohio

2022). If the moving party establishes that factor, the court then determines whether transfer is appropriate by balancing case-specific factors, including the private interests of the parties and public-interest concerns, such as systemic integrity and fairness, that come under the rubric of "interests of justice." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (citation omitted). Private interests include: "(1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum." *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (citing *Stewart v. Am. Eagle Airlines, Inc.*, No. 3-10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010)). Public interests include the "enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law." *Id.* Transfer of venue is inappropriate where it serves only to shift inconvenience from one party to the other. *Id.* (citations omitted).

    **B.**    **Discussion**

The Jack's entities have followed the procedure outlined by *Kerobo* in this case. After the plaintiff filed suit in the Circuit Court for Davidson County, Tennessee, the Jack's entities removed to this court—the U.S. District Court for the Middle District of Tennessee, Nashville Division—as the court "for the district and division embracing the place" the case was originally pending. 28 U.S.C. § 1441(a). In other words, "the action was removed to the only venue permitted by § 1441(a)." *Kerobo*, 285 F.3d at 534; *see also Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001) ("[A]s a matter of law, § 1441(a) established federal venue in the district court where the state action was pending, and it is immaterial that venue was improper under state law when the action was originally filed.").

The defendants followed removal by seeking transfer of venue under § 1404(a), arguing that the relevant factors weigh strongly in favor of transfer. The plaintiff responds that they have not met their burden of showing that transfer is warranted.

The parties agree that this lawsuit could have been filed in the Eastern Division of the Western District of Tennessee, the proposed transferee court, as the division and district in which Hardin County is located and where the incident giving rise to this lawsuit occurred. *See* 28 U.S.C. §§ 123(c)(1), 1391(b)(2). The defendants having cleared that hurdle, the court weighs the relevant factors to determine whether transfer under § 1404(a) is warranted.

### 1. The Plaintiff's Choice of Forum

"A plaintiff's choice of forum is usually entitled to substantial consideration in balancing the § 1404(a) factors." *Sacklow*, 377 F. Supp. 3d at 877 (internal quotation marks and citation omitted). However, "where the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice." *Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) (alteration in original) (citation omitted). "Nevertheless, less weight does not mean no weight." *First Fin. Bank v. Knapschaefer*, 697 F. Supp. 3d 733, 737 (N.D. Ohio 2023).

Here, the plaintiff resides in Shelbyville, Tennessee, but he chose to file suit in the Circuit Court for Davidson County, in Nashville, Tennessee. The state court is in the same city as this court, but this court is not actually the plaintiff's "chosen forum." The court nonetheless finds that the plaintiff's choice to bring suit in Nashville is entitled to some deference, insofar as his attorney is located here, and the distance from his home in Shelbyville to Nashville is roughly half the distance between Shelbyville and Jackson, Tennessee, where the transferee court is seated. 28 U.S.C. §§ 123(c)(1). That choice is not entitled to much deference, however, because the plaintiff does not live in this district and, as noted, did not choose to file suit in federal court. Moreover, if

he had chosen to file suit in federal court, venue in the Middle District of Tennessee would not have been appropriate under § 1391(b).[5]

### 2. *Convenience of Witnesses and Ability to Compel Unwilling Witnesses*

The convenience of the witnesses—specifically non-party witnesses—is "one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *First Fin. Bank*, 697 F. Supp. 3d at 738 (citations omitted).

The defendants argue that this factor weighs in favor of transfer, because "the witnesses (aside from Plaintiff . . .) are likely to be located in the Western District," where the slip-and-fall incident took place. (Doc. No. 11-1 at 5–6.) The plaintiff responds that the defendants have not actually identified any witnesses who would be significantly inconvenienced if the proceeding were not transferred. (Doc. No. 15 at 3.) He points out that "modern litigation technology, including Zoom capabilities and electronic document sharing, minimizes any burden on witnesses" and that depositions of the defendants' employees will be conducted by Zoom. (*Id.* at 3–4.) In their Reply, the defendants argue that this factor weighs heavily in favor of transfer, because any witnesses who reside in Hardin County could be compelled to testify in Jackson, Tennessee but would be outside this court's subpoena power. (Doc. No. 16 at 2 (citing Fed. R. Evid. 45(c)).)

The court finds that this factor weighs heavily in favor of transfer. Although the defendants do not identify specific non-party witnesses, they also have not yet had the ability to conduct discovery. Witnesses to the incident who are former employees or Restaurant patrons would be

---

[5] The defendants state, in passing and without elaboration, that the plaintiff "improperly" filed his lawsuit in the Circuit Court for Davidson County, Tennessee. (*See* Doc. No. 11-1 at 4.) As the plaintiff points out, they are wrong; suit in that venue was appropriate under Tennessee law, *see* Tenn. Code Ann. § 20-4-104, even though the suit could not have been properly brought in this district under federal law, *see* 28 U.S.C. § 1391(a)(b). None of this is material, however, as the defendants removed to the appropriate court and seek transfer under § 1404(a).

outside the defendants' control and could not be compelled to appear in Nashville, but they could be compelled to testify in Jackson.

3. *Convenience of the Parties*

This factor generally considers the residence of the parties. No party resides in this district. The plaintiff resides in Bedford County, which lies in the Winchester Division of the Eastern District of Tennessee, 28 U.S.C. § 123(a)(4), and the defendants are out-of-state businesses. At the same time, however, the defendants operate a business in the transferee district, as a result of which the court finds that this factor weighs slightly in favor of transfer.

4. *Access to Evidence*

The defendants argue that the sources of evidence are in the transferee district, "since the physical premises are located in the Western District." (Doc. No. 11-1 at 6.) They also argue that a jury seated in Jackson, Tennessee would be able to view the premises, as the courthouse in Jackson is just over 50 miles away from Savannah, while the Nashville courthouse is more than 135 miles away. They argue that "[t]o proceed in the Middle District risks limiting the witnesses and proof available to the parties." (Doc. No. 16 at 3.) The plaintiff responds that it is unlikely that the slippery substance that caused his fall is still present, that on-site inspection could be conducted by the parties' attorneys and experts, and that premises liability cases like this one "typically revolve around corporate policies, procedures, [and] maintenance records," which are likely maintained out-of-state in the defendants' corporate offices. (Doc. No. 15 at 4.) He argues that the defendants have failed to establish the existence of any "critical physical evidence [that] necessitates a transfer." (*Id.*)

The court finds that this factor is basically neutral, since it is unlikely that the jury will need to take a field trip to inspect the premises, and the defendants have not identified any actual sources of physical evidence that are maintained on the premises. The court presumes that policy and

procedure manuals and maintenance records may be relevant and are likely to be located on-site, but such records are readily transferable.

       5.       *Locus of Operative Facts*

The incident giving rise to the lawsuit occurred within the Western District, and the court finds that this factor weighs heavily in favor of transfer.

       6.       *Other Factors*

The defendants argue that there is no local interest in deciding this controversy here, since it did not arise within this district and none of the operative evidence or parties are located here, and that the "burden of imposing jury duty and expending judicial resources in a district with no connection to the case weighs in favor of transfer." (Doc. No. 11-1 at 6.) The plaintiff counters that this district has a "legitimate interest in adjudicating this case," because the Jack's entities "voluntarily chose to do business in Tennessee and maintain agents in Davidson County." (Doc. No. 15 at 4.) He also argues that the defendants' "generic and unsupported claim that the Middle District would be 'burdened' lacks merit," that the defendants have failed to show that judicial efficiency weighs in favor of transfer or that this district is "an improper or significantly less convenient forum," and that this district is as well equipped as the Western District to apply Tennessee law. (*Id.*) He argues generally that the defendants simply seek to transfer this case "from a proper venue to another district they deem to be more favorable to their case." (*Id.* at 5.)

The court finds that, while many of the "public interest" factors identified above have no relevance here, the fact that this district has no connection to the controversy or the parties and, as a result, no legitimate interest in resolving the dispute, weighs strongly in favor of transfer. The fact that one of the two Jack's entities (Jack's Family Restaurants, LP) has a registered agent for service of process located in Nashville does not provide any kind of nexus to the controversy or

give this court an interest in resolving the dispute. And, as set forth above, this court has no ability to compel the attendance of witnesses located in Savannah, Tennessee.

       7.    *Weighing the Factors*

The court finds that one factor—the plaintiff's choice of forum—weighs slightly in favor of maintaining the case in this court. Many of the other factors are neutral or irrelevant, but the transferee court's ability to compel the attendance of witnesses, its legitimate interest in resolving a dispute concerning a local business and a personal injury that occurred within its geographic limits, and the fact that it is the locus of operative facts all weigh strongly in favor of transfer. The court finds, in sum, that the Jack's defendants have carried their burden of establishing that transfer is warranted under § 1404(a).

## III. CONCLUSION

For the reasons set forth herein, defendant Broadstone's Motion to Drop (Doc. No. 14) will be granted, and all claims against Broadstone will be dismissed without prejudice. The Jack's entities' Motion to Transfer (Doc. No. 11) will be granted, and this case will be transferred to the Eastern Division of the Western District of Tennessee.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge